J-A02003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES CALVIN HAMLETT, JR. | : | |
| | : | |
| Appellant | : | No. 1172 WDA 2016 |

Appeal from the Judgment of Sentence June 30, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014824-2015

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 11, 2018**

James Calvin Hamlett, Jr., appeals from the judgment of sentence of life imprisonment imposed following his jury trial convictions for a litany of crimes involving his sexual assault of a thirteen-year-old child.  We affirm in part, reverse in part, and remand for further proceedings.

Appellant, who was sixty-one years old at the time of the crimes, met R.E. when he gave her a ride in his jitney.[1]  Over time, Appellant became friends with R.E. and her family.  On September 16, 2015, Appellant took R.E., then thirteen years old, to a Pittsburgh Pirates game.  After the game, Appellant took R.E. to a restaurant, and, at approximately midnight, the two left for R.E.'s home.

_____

[1] A jitney is an unlicensed taxi.

Instead of driving R.E. home, Appellant drove to several neighborhoods while the two chatted. At some point, R.E. fell asleep, and woke up after 2:00 a.m. R.E. panicked and asked if her mom knew where she was. Appellant reassured R.E. that he had spoken to her mother, and was taking R.E. to the home of Appellant's daughter. Eventually, Appellant declared that he had changed his mind and that he would take R.E. home.

Appellant drove back to R.E.'s neighborhood, but took the vehicle to an alley with woods on one side and an abandoned house on the other. R.E. was scared and opened the door to leave, but Appellant promised that he would take her home. R.E. closed the door, and Appellant grabbed her jacket, causing R.E. to try and leave through the back passenger door. R.E. screamed for help, but Appellant grabbed her hooded sweatshirt and hair and told her to "shut the f*** up or I will knock you the f*** out." N.T. Vol. I, 6/24-28/16, at 53. Appellant allowed her to go outside to use the bathroom, and dragged her back to the vehicle in a headlock. At some point during these events, Appellant placed something sharp against her neck which caused pain.

Back inside the vehicle, Appellant told R.E. to take off her clothes. Appellant inserted his finger into her vagina and kissed her breasts. He pulled his pants down and appeared to pleasure himself. Eventually, Appellant told R.E. that he loved her too much and could not "do this." He told her to put her clothes on, then drove her home.

R.E. immediately told her mother, who called the police. R.E. went to a hospital, where a rape kit was performed. Photographs were taken, one of which depicted a fresh mark where Appellant had pushed the object into her neck.

Due to the foregoing, Appellant was charged with unlawful restraint of a minor, two counts of aggravated indecent assault, simple assault, indecent assault, attempted rape, terroristic threats, and kidnapping of a minor. The jury convicted Appellant at all counts. Appellant was thereafter sentenced to three mandatory minimum sentences of life imprisonment, which applied due to his two prior convictions for sexual crimes.

Appellant filed a timely notice of appeal from the denial of his post-sentence motion. Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement, and the court issued an opinion in response. The matter is ready for review of Appellant's four claims.

I. Was the evidence insufficient as a matter of law to convict [Appellant] of aggravated indecent assault, as charged in the criminal information, as his accuser, R.E., was not less than 13 years of age on the date of the incident?

II. Was the evidence insufficient as a matter of law to convict [Appellant] of unlawful restraint of a minor as the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] exposed R.E. to actual risk of serious bodily injury[?]

III. Did the trial court err by permitting the Commonwealth to admit as a prior consistent statement the entire videotaped recording of R.E.'s forensic interview where admission of the statement served only to duplicate and impermissibly bolster R.E.'s in–court testimony?

IV.    Are the three mandatory life sentences imposed illegal and must they be vacated where (a) the Commonwealth failed to prove the fact of [Appellant]'s prior convictions to the jury beyond a reasonable doubt and (b) the Commonwealth failed to include both the mandatory sentencing provision in the formal charging document and any allegation of its triggering facts, such that [Appellant] was sentenced for aggravated offenses [*sic*] that he was never formally charged with or convicted of committing?

Appellant's brief at 6-7.

# I

## Sufficiency of evidence claims

Appellant's first claim asserts that the evidence supporting his conviction for violating 18 Pa.C.S. § 3125, as charged at count three of the information, was insufficient. Our standard of review is well-settled.

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. N.M.C.*, 172 A.3d 1146, 1149 (Pa.Super. 2017) (quoting *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016)). For the following reasons, we find that the Commonwealth presented insufficient evidence to satisfy the felony of the first degree grading; however, we find that the Commonwealth established evidence of the lesser-included felony of the second degree charge, and remand for further proceedings.

**A**

<u>The evidence was insufficient to establish the grading of aggravated indecent assault as a felony of the first degree</u>

The language contained in the criminal information is relevant to Appellant's argument, which we now quote:

> Count: 3     AGGRAVATED INDECENT ASSAULT          Felony 1
>
> The actor engaged in penetration, however slight, of the genitals or anus of Jane Doe, a minor, **a person less than 13 years of age**, with a part of the actor's body for a purpose other than good faith medical, hygienic or law enforcement procedures, by forcible compulsion or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution **in violation of Sections 3125(a)(2), (a)(3) and (b) of the Pennsylvania Crimes Code**, Act of December 6, 1972, 18 Pa. C.S. §3125(a)(2), (a)(3) and (b), as amended.

Criminal Information, 12/23/15, at 2 (emphases added).

As emphasized, the Commonwealth specified in its charging document that it intended to prove that R.E. was under thirteen, and that Appellant violated 18 Pa.C.S. § 3125(a)(2), (a)(3) and (b), graded as a felony of the first degree. The statutory text is set forth *infra*. For present purposes, it is

enough to note that § 3125(b) requires proof that the victim was under thirteen. The Commonwealth concedes that R.E. was not under thirteen at the time of the crime.

Therefore, the question is what relief to grant. Appellant states that this Court is compelled to discharge the conviction.

> The variance between the Criminal Information and the Commonwealth's proof at trial is fatal to the validity of [Appellant]'s conviction for Aggravated Indecent Assault. The Commonwealth's charging scheme required it to prove beyond a reasonable doubt that R.E. was less than 13 years of age in order for [Appellant] to be convicted of Count 3 - Aggravated Indecent Assault, as charged.
>
> However, the evidence presented at trial demonstrated that R.E. was 13 years of age on the date of the alleged incident, not less than 13 years of age. . . . The evidence was therefore insufficient as a matter of law to sustain [Appellant]'s conviction at Count 3. This conviction and sentence must be vacated.

Appellant's brief at 21 (citation and emphasis omitted).

The Commonwealth agrees that a number of cases stand for the proposition that the inclusion of a particular allegation in the charging document requires the Commonwealth to prove it. *See Commonwealth v. Lambert*, 313 A.2d 300, 301 (Pa.Super. 1973) (where Commonwealth specifically charged corruption of minors by means of furnishing "dangerous drugs," the failure to prove that the drugs were dangerous warranted discharge). The Commonwealth concedes that it failed to prove R.E. was less than thirteen. "[T]he evidence showed that the complainant's thirteenth birthday was [redacted], and the crimes were committed over a month later

in mid-September." Commonwealth's brief at 22. Nevertheless, the Commonwealth asserts that the proper remedy is resentencing. "[T]he victim was thirteen years old at the time and Appellant should have been charged at this [c]ount as a second degree felony and not a first degree felony." Commonwealth's brief at 23 (quoting Trial Court Opinion, 3/13/17, at 5). The Commonwealth does not develop an argument as to why the defect is not fatal, but rather "concurs that such relief is appropriate." *Id*.

This case is analogous to **Commonwealth v. Kelly**, 102 A.3d 1025 (Pa.Super. 2014) (*en banc*), which involved a prosecution for corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii). That statute read, in pertinent part:

> **(a) Offense defined.**—
>
> (1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (ii) Whoever, being of the age of 18 years and upwards, *by any course of conduct in violation of Chapter 31* (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

*Id*. at 1028 (emphasis supplied by **Kelly**).

We noted that the Commonwealth proceeded on the felony of the third degree grading specified at § 6301(a)(1)(ii), not the misdemeanor of the first degree grading specified at § 6301(a)(1)(i):

The Commonwealth filed a criminal complaint on January 24, 2012, charging [Kelly] with three counts of indecent assault, 18 Pa.C.S. § 3126(a)(1), (2) and (7), and one count of corruption of minors, 18 Pa.C.S. § 6301. Immediately prior to [Kelly]'s non-jury trial, **the criminal information was amended to reflect the felony gradation of the corruption of minors offense**, 18 Pa.C.S. § 6301(a)(1)(ii). The trial was held on August 8, 2012, and the court found [Kelly] guilty of all counts.

*Id*. at 1027–28 (emphasis added).

The bulk of *Kelly* involved our statutory analysis that a single act did not qualify as a "course of conduct." Significantly, *Kelly* did not discharge the conviction despite the Commonwealth's failure to establish that element of § 6301(a)(1)(ii) as alleged in the information. Kelly, like Appellant herein, argued that the failure to do so implicated the validity of the conviction. We disagreed. "Although [Kelly] directs his claim at the sufficiency of the evidence supporting his conviction for corruption of minors, his sufficiency claim actually addresses the grading of the offense of corruption of minors rather than the offense itself[.]" *Id*.

Having established that the Commonwealth failed to prove a course of conduct, we remanded for resentencing at § 6301(a)(1)(i), notwithstanding the Commonwealth's amendment of the criminal information to exclude that crime. We quote that analysis in full:

Nevertheless, the evidence was sufficient to support the misdemeanor grading of the corruption of minors offense, subsection (a)(1)(i), and [Kelly] does not allege otherwise. It is "the settled law in Pennsylvania ... that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged." ***Commonwealth v. Sims***, 591 Pa. 506, 919 A.2d 931, 938 (2007).

- 8 -

A lesser-included offense is a crime having elements of which are a necessary subcomponent of elements of another crime, the greater offense. The elements in the lesser-included offense are all contained in the greater offense; however, the greater offense contains one or more elements not contained in the lesser-included offense.

*Commonwealth v. Reese*, 725 A.2d 190, 191 (Pa.Super.1999) (quoting *Commonwealth v. Blackwell*, 436 Pa.Super. 294, 647 A.2d 915, 927 (1994)).

Here, the first part of both subsections of 18 Pa.C.S. § 6301(a)(1) require a defendant to do something that "corrupts or tends to corrupt the morals of any minor less than 18 years of age...." 18 Pa.C.S. § 6301(a)(1)(i), (ii). In the case of the first part of subsection (a)(1)(i), that 'something' is "any act...." In the case of the first part of subsection (a)(1)(ii), that 'something' is "any course of conduct in violation of Chapter 31...." These are not different elements. Rather, the first provision of subsection (a)(1)(ii) requires additional elements not required by the first provision of subsection (a)(1)(i). As we hold in this opinion, one of the additional elements in subsection (a)(1)(ii) is that "any course of conduct" requires proof of more than one act, whereas subsection (a)(1)(i) only requires a single act. Furthermore, subsection (a)(1)(ii) requires that the "course of conduct" alleged must constitute one or more Chapter 31 offenses. **Thus, the first provision of subsection (a)(1)(i) is a lesser included 'offense' of the 'offense' defined by the first part of subsection (a)(1)(ii)**.

As we stated in *Reese*, " 'upon indictment for a particular crime, a defendant may be convicted of a lesser offense included within that crime.' As long as conviction is for a lesser-included offense, the defendant will have been put on notice of the charges against him and can adequately prepare a defense." *Reese*, 725 A.2d at 191 (quoting *Commonwealth v. Sewell*, 702 A.2d 570, 571 (Pa.Super.1997)). Here, **[Kelly] was charged with the offense of corruption of minors, and convicted under the felony grading of the offense**. Although we conclude that there was insufficient evidence of a violation of the felony grading of that offense, [Kelly]'s commission of an indecent assault against the victim was sufficient evidence of the lesser

included crime, that of the misdemeanor grading of corruption of minors. Accordingly, we vacate [Kelly]'s entire sentence and remand for the trial court to resentence [Kelly] in accordance with this opinion. ***See Commonwealth v. Waters***, 988 A.2d 681 (Pa.Super.2009) (remanding for resentencing on the second-degree felony grading of burglary where there was insufficient evidence of the first-degree felony grading).

***Id***. at 1032–33 (emphases added).

A review of § 3125 establishes that the same principles apply. The criminal information charged Appellant with violating "Sections 3125(a)(2), (a)(3) and (b) of the Pennsylvania Crimes Code[.]" Criminal Information, 12/23/15, at 2. We now set forth the aggravated indecent assault statutory text:

> **(a) Offenses defined.** . . . a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> > (1) the person does so without the complainant's consent;
> >
> > (2) the person does so by forcible compulsion;
> >
> > (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
> >
> > (4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;
> >
> > (5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or

other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

**(b) Aggravated indecent assault of a child.--**A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

**(c) Grading and sentences.--**

(1) An offense under subsection (a) is a felony of the second degree.

(2) An offense under subsection (b) is a felony of the first degree.

18 Pa.C.S. § 3125.

Appellant was charged with violating § 3125, convicted of that offense, and sentenced under the felony of the first degree grading. That grading cannot be supported. However, the felony of the second degree offense is a lesser-included offense that is fully supported by the evidence.

Pursuant to **Kelly**, there is no doubt that violations of § 3125(a)(2) or (a)(3) are lesser-included offenses of (b). Section (a) defines the offense[2] of aggravated indecent assault, and sets forth eight separate ways in which that crime is committed. Subsection (b) states that aggravated indecent assault of a child is established when the person violates, *inter alia*, subsections (a)(2) or (a)(3) **and** the complainant is less than thirteen years old. Thus, the underlying (a) violations are included within the definition of (b), whereas (b) includes the additional requirement that the victim must be under thirteen.

Additionally, the grading of the offense is governed by § 3125(c). Any offense under (a) is graded as a felony of the second degree. 18 Pa.C.S. § 3125(c)(1). An offense under (b) is graded as a felony of the first degree. 18 Pa.C.S. § 3125(c)(2). Thus, the fact that R.E. was thirteen when the violations of (a)(2) and/or (a)(3) were committed means only that the Commonwealth failed to establish that the victim was under thirteen as required by § 3125(b). Accordingly, the grading of the offense as specified by § 3125(c)(2) is unsupported. The grading set forth at § 3125(c)(1), however, has been met, and Appellant does not argue that the Commonwealth failed to establish that he committed the underlying (a)(2)

---

[2] As in **Kelly**, we are here concerned with "lesser included" offenses as applied to the same statutory crime, *i.e.*, aggravated indecent assault. This is not a situation wherein we are substituting an entirely different crime; *e.g.*, simple assault in place of aggravated assault.

J-A02003-18

and/or (a)(3) offenses.[3]   Pursuant to **Kelly**, we vacate the judgment of

sentence at that count and remand for further proceedings consistent with

this disposition.[4]

_____

[3] R.E.'s testimony that he held a sharp object to her throat and dragged her back to the vehicle, and inserted his finger into her vagina, establishes that he "engage[d] in penetration . . . of the genitals . . . by forcible compulsion" or "by threat of forcible compulsion that would prevent resistance[.]" Therefore, the evidence clearly sufficed to establish violations of (a)(2) and/or (a)(3).

[4] Appellant's reply brief argues, for the first time, that he cannot be sentenced at this count because he was separately convicted at count two of violating 18 Pa.C.S. § 3125(a)(8).  According to Appellant, sentencing him at both counts is illegal under **Commonwealth v. Owens**, 649 A.2d 129, 137 (Pa.Super. 1994), which analyzed 18 Pa.C.S. § 3126.  That crime, like the instant aggravated indecent assault statute, used the word "or" to offset alternative bases of liability.  **Owens** concluded that the defendant could only be sentenced "for one episode of indecent assault."  **Id**. at 139. **Owens** was based on **Commonwealth v. Shannon**, 608 A.2d 1020 (Pa. 1992), a plurality decision, which concluded that the Legislature's use of "or" to offset different ways in which that crime is committed "reveals a design to proscribe the same harm[.]"  **Id**. at 1024.  Hence, multiple convictions for violations of the same criminal statute, albeit at separate subsections, could not stand.

Notably, **Shannon** predates **Commonwealth v. Anderson**, 650 A.2d 20 (Pa. 1994), and the enactment of 42 Pa.C.S. § 9765, effective February 7, 2003, which states that "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense."  In **Commonwealth v. Baldwin**, 985 A.2d 830 (Pa. 2009), our Supreme Court noted "This Court's pre-Section 9765 jurisprudence characterized the merger doctrine as, first and foremost, a rule of statutory construction." **Id**. at 835.  **Shannon**'s conclusion was based on "the fair import of the statute's terms[.]"  **Shannon**, **supra** at 1024.

Appellant does not discuss any of these later precedents, nor does his brief cite 42 Pa.C.S. § 9765.  We do not have the benefit of the Commonwealth's
*(Footnote Continued Next Page)*

- 13 -

**B**

The Commonwealth established the crime of unlawful restraint of a minor

Appellant's second issue is that the evidence was insufficient to establish the offense of unlawful restraint of a minor. Appellant was charged under the following subsection:

**(b) Unlawful restraint of a minor where offender is not victim's parent.--**If the victim is a person under 18 years of age, a person who is not the victim's parent commits a felony of the second degree if he knowingly:

(1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury[.]

18 Pa.C.S. § 2902(b).

The only element at issue is whether the Commonwealth proved that Appellant "restrain[ed] another unlawfully in circumstances exposing [her] to risk of serious bodily injury." Citing **Commonwealth v. Schilling**, 431 A.2d 1088 (Pa.Super. 1981), Appellant notes that we have held that the Commonwealth must establish that "the defendants put another in actual danger of serious bodily injury." **Id**. at 1092. Appellant argues that the Commonwealth failed to do so under **Schilling**, which we now examine.

Therein, Schilling pressured his date for sex after driving her to a rural area in his vehicle. When the victim declined and asked to go home,

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

position on this issue, nor will we do Appellant's work of fashioning an argument on his behalf. Thus, we decline to hold that Appellant cannot be separately sentenced at this count.

Schilling "suddenly pulled out a pistol from the glove compartment of his car and placed it to the [victim]'s left temple. Out of fear for her life, she agreed to comply[.]" *Id*. at 1090. Schilling placed the gun in the backseat and had oral sex with the victim. The weapon turned out to be a pellet gun that used $CO_2$ cartridges. We reversed the unlawful restraint conviction based on an analysis of the same statutory language at issue herein:

> In [***Commonwealth v. Trowbridge***, 395 A.2d 1337 (Pa.Super. 1978)], this Court noted that with respect to the crime of recklessly endangering another person that mere apparent ability to inflict harm is not enough to support a conviction for this crime. It was held that an actual danger of harm must be shown. Although ***Trowbridge*** did not deal with the same crime we have here, it is important with respect to the fact that the Commonwealth had to prove an actual danger of serious bodily injury with regard to the pointing of an air rifle. In ***Trowbridge*** we held that the Commonwealth must prove either that the gun was loaded or that the surrounding circumstances were inherently dangerous in order to sufficiently show an actual danger of serious bodily injury. As was the case in ***Trowbridge***, the Commonwealth here has not proven that the gun was loaded. Quite to the contrary, appellant Schilling testified that the gun was not loaded. Moreover, we cannot say that the circumstances surrounding Mr. Schilling's actions were so inherently dangerous that he nevertheless exposed the prosecutrix to an actual danger of serious bodily injury despite the fact that the gun was unloaded. Thus, the evidence was not sufficient to support a conviction under the subsection of unlawful restraint with which Mr. Schilling was charged.

*Id*. at 1092.

Appellant reasons that the evidence establishing an actual danger is even more lacking in this case, because ***Schilling*** involved an actual weapon whereas here R.E. could not identify what the sharp object pressed to her neck was. According to Appellant, while R.E. "felt something sharp on her

neck or underneath her chin . . . R.E. was never able to determine what was causing this sensation." Appellant's brief at 24-25. Appellant claims that the Commonwealth failed to establish the circumstances "were any more inherently dangerous than the circumstances in *Schilling* such that [Appellant]'s actions nevertheless exposed R.E. to serious bodily injury in the absence of a weapon." *Id*. at 25 (emphasis added). The Commonwealth, on the other hand, notes that our standard of review requires all inferences to be drawn in its favor as verdict winner, and that R.E. testified that Appellant used some type of sharp object.

We find that the Commonwealth established that the surrounding circumstances were inherently dangerous. R.E. testified that the object Appellant used was sharp, and the object left a visible mark as established by the pictures taken at the hospital later that morning. Additionally, Appellant forced R.E. back into his vehicle by placing her in a headlock. In *Commonwealth v. Melvin*, 572 A.2d 773 (Pa.Super. 1990), we distinguished *Schilling* as follows:

> It is no small distinction, however, that appellant in the instant case did not use an air gun but a sawed-off shotgun which is inherently more dangerous. Moreover, we find the second part of the analysis has been met in that appellant subjected his two victims to circumstances which were inherently dangerous. Forcing Mr. Ianuale to drive a car at gunpoint to hunt down a man named Rick, who earlier had shot at appellant, was sufficient proof of inherently dangerous circumstances showing appellant had placed the victims in danger of serious bodily harm.

*Id*. at 775.

*Melvin* is more akin to these factual circumstances than *Schilling*, as this case involves much more than merely pointing a weapon at the victim's body. Appellant inflicted actual injury when R.E. attempted to flee. He held a sharp object to her throat and he told her to "shut the f*** up," suggesting that further noncompliance would result in violence. The incident occurred after 2:00 a.m. in a remote location. Moreover, Appellant ignores the disparity in size and age between himself and the thirteen-year-old victim. All of these factors are relevant to whether the surrounding circumstances were inherently dangerous. In *Commonwealth v. McBall*, 463 A.2d 472 (Pa.Super. 1983), we stated:

> The court did not err in refusing to grant defendant's demurrer to the charge of unlawful restraint. The terrified victim was certainly exposed to serious injury. She was pulled, grabbed by the neck and held down. He repeatedly threatened to kill her. He pushed and shoved her. He disrobed and raped her. The defendant was 5'8", weighed 225 pounds and was an Olympic class weight lifter. The victim was 5'2" and weighed less than 100 pounds. The complaint is clearly without merit.

*Id*. at 474.

Taking these facts together, we find that the Commonwealth established inherently dangerous circumstances and this challenge fails.

## II

## Evidentiary claims

<u>Evidentiary challenge to introduction of a prior consistent statement</u>

- 17 -

Appellant's third claim is that the trial court erred in permitting the Commonwealth to play, as a prior consistent statement, a forensic interview between R.E. and an unidentified party.[5]  This video was played to the jury over Appellant's objection, albeit with certain items redacted per the Commonwealth's agreement that those items were inadmissible.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." **Commonwealth v. Shull**, 148 A.3d 820, 845 (Pa.Super. 2016) (citation omitted).  Rule of Evidence 613(c) specifically governs the admission of a prior consistent statement for rehabilitative purposes.

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> > (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
> >
> > (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

---

[5] The trial court's opinion states that the interview was given the day after the assault.  **See** Trial Court Opinion, 3/13/17, at 4.

We agree that the trial court erred. However, we find that the error was harmless beyond a reasonable doubt.

**A**

*Per se* admission was an abuse of discretion

The trial court opined that R.E.'s prior consistent statements were *per se* admissible not for rehabilitation, as required by Rule 613, but for corroboration, as indicated in its Rule 1925(a) opinion:

> Next, Appellant alleges that this Court abused its discretion in permitting the Commonwealth to admit the victim's forensic interview video as a prior consistent statement. Appellant further alleges that this Court abused its discretion in admitting the forensic interview because it duplicated the accuser's testimony and was unfairly prejudicial. When offered for the truth of the matter asserted therein, prior consistent statements are usually inadmissible hearsay. However, when offered to corroborate in-court testimony, a prior consistent statement is not hearsay. **Commonwealth v. Willis**, 552 A.2d 682, 691 (Pa. Super. 1988).
>
> . . . .
>
> **See also Commonwealth v. Hunzer**, 868 A.2d 498 (Pa.Super. 2005).
>
> Appellant argues that prior consistent statements are only admissible in rebuttal to show that a witness is fabricating their testimony as a result of a corrupt motive. This claim lacks merit. The exceptions defined by the Superior Court include child victims of sexual assault and does not require prior impeachment. **Id**. The forensic interview falls within this exception, and this Court did not abuse its discretion by admitting the tape.
>
> The witness, thirteen[-]year[-]old [R.E.], made a prior consistent statement in a forensic interview conducted the day after the assault.

Trial Court Opinion, 3/13/17, at 4.

The trial court's analysis primarily drew from **Commonwealth v. Willis**, 552 A.2d 682, 691–92 (Pa.Super. 1988) (*en banc*), which does contain language suggesting, but not holding, that admitting prior consistent statements under these circumstances is always permissible. The trial court quoted, *inter alia*, the following:

> To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay.
>
> The general rule of exclusion of prior consistent statements, then, is based not upon hearsay grounds but upon a general consensus that the relevance of such evidence to corroborate *unimpeached* testimony is ordinarily outweighed by the danger of fraudulent manufacture of evidence, confusion of issues, undue delay, and needless repetition of cumulative evidence.
>
> The general rule precluding corroboration of unimpeached testimony with prior consistent statements is subject to exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. Among the common examples of such exceptions are prior consistent statements which constitute prompt complaints of sexual assault and prior consistent statements which constitute prior statements of identification. Evidence of a prompt complaint of sexual assault is considered specially relevant because (rightly or not) a jury might question an allegation that such an assault occurred in absence of such evidence. . . .
>
> Prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment. . . . jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child

victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

*Id*. at 691–92 (citations and footnotes omitted, emphasis in original).

*Willis* therefore suggests that the admission of prior consistent statements of "even unimpeached testimony of child witnesses" is proper, at least under a framework that considers the objection as grounded in hearsay. However, a holding must be interpreted in the context of its facts, ***Commonwealth v. McCann***, 478 A.2d 883, 884 (Pa.Super. 1984), and *Willis* involved statements by an eight-year-old child. The instant case involves a thirteen-year-old, who, while still a child, cannot in our view be presumed to share the same characteristics of "fantasy, exaggeration, suggestion, or decay of the original memory" that apply to an eight-year-old.

More importantly, we note that *Willis* discussed the admissibility of prior consistent statements as an exception to hearsay, and explained why such statements are not offered for their truth. *Willis* therefore did not address the fact that Pa.R.E. 613 is not an exception to hearsay but rather a

separate rule of evidence.[6]  This omission is explained by the fact that **Willis** predated the enactment of the Rules of Evidence in this Commonwealth. Therefore, we find that **Willis** does not support the trial court's broad view of the admissibility of the instant statements.

This point was briefly addressed in **Hunzer**, **supra**, also cited by the trial court in support, which likewise does not support the trial court's *per se* view.  In **Hunzer**, the defendant was convicted of sexual assault of his then three-year-old daughter, who was six at the time of trial.  The Commonwealth called a caseworker for Children and Youth Services who had interviewed the victim on three occasions.  Hunzer's cross-examination explored the content of those prior statements as inconsistent with the victim's trial testimony.  On redirect, the trial court allowed the Commonwealth to elicit testimony regarding the victim's prior consistent statements.  Hunzer claimed that the admission of the statements was erroneous, and argued that **Willis** was not controlling as it predated Pa.R.E. 613.

The **Hunzer** Court, like the trial court herein, quoted large portions of **Willis**, including the quote "Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses[.]"

---

[6] Recorded statements may, of course, be admissible on other grounds. **See** Pa.R.E. 803.1(3) (recorded recollection exception to hearsay); **Commonwealth v. Shelton**, 170 A.3d 549 (Pa. 2017) (upholding admission of forensic interview pursuant to that exception).

*Id*. at 512 (quoting *Willis*). The *Hunzer* Court nevertheless determined that the statement was admissible because of the degree to which the victim's testimony was impeached. *Id*. at 513. Thus, *Hunzer* did not rely on *Willis*.

Notably, *Hunzer* appeared to accept the continuing vitality of *Willis* even following the enactment of Pa.R.E. 613. As this Court stated in *Commonwealth v. Bond*, --- A.3d ----, 2018 WL 2947871 (Pa.Super. June 13, 2018), a case decided following submission of briefs in this matter, the view set forth by *Willis*/*Hunzer* regarding the introduction of prior consistent statements for purely corroborative purposes

> seems at odds with the express language of Rule 613, in that it is far more permissive of prior consistent statements, at least in the context of the sexual assault of a child. *Willis*, from which the *Hunzer* Court quoted, pre-dated the enactment of Rule 613 and the Tender Years Act, 42 Pa.C.S.A. § 5985.1. The *Hunzer* defendant therefore argued that the trial court erred in relying on *Willis* rather than Rule 613. The *Hunzer* Court concluded that the Commonwealth used prior consistent statements "to rebut an inference of recent fabrication arising during cross-examination." *Id.* at 513.

*Id*. at *4 (footnote omitted). We followed that analysis with this observation:

> We are cognizant that a three-judge panel of this Court is not free to overrule the decision of a previous three-judge panel. Our result therefore does not affect the precedential value of *Hunzer*. As explained in the main text, the *Hunzer* Court found a prior consistent statement admissible because it rebutted an allegation of recent fabrication. *Hunzer* is therefore in harmony with Rule 613. *Willis*, however, is not. We conclude that the *Hunzer* Court's reliance on *Willis* is *dicta*, and that Rule 613 and the Tender Years Act have superseded *Willis*.

- 23 -

*Id*. at n.4.

**Bond**, as discussed *infra*, involves the introduction of prior consistent statements for purposes of rehabilitation, not corroboration. The case, however, clearly discredits the corroboration rationale. For the foregoing reasons, we find that the trial court abused its discretion in admitting the evidence for purely corroborative purposes.

**B**

<u>Statements were not admissible to rebut a claim of fabrication</u>

In the alternative, the Commonwealth argues that admission of the statement would have been admissible to rebut actual impeachment.

> [T]he principal reason for allowing prior consistent statements into evidence is when a witness had been impeached, expressly or impliedly, with faulty memory or as having been induced to fabricate the testimony by improper motive or influence. Although the court below did not express this as a reason for its decision, it certainly applies in this case. Here, the defense attorney began explicitly calling the victim a liar in his opening speech. Later, on cross-examination, he directly asked the victim whether she had lied under oath. Defense counsel also tried to impeach the victim on: (1) the alleged contradiction between her preliminary hearing testimony and her trial testimony about whether the back seats in appellants car were up or down; (2) whether she was fabricating answers about there [being] streetlights in the place where she was assaulted based on the alleged contradiction between preliminary hearing and trial testimony ()() [*sic*]. In sum, defense counsel attempted to impeach the victim's memory, veracity, accuracy and motives. All of this impeachment occurred prior to the playing of the video; unquestionably, therefore, it was relevant to rehabilitate the victim's testimony. Thus, the video was admissible under the exception concerning impeachment and subsequent rehabilitation.

Commonwealth's brief at 41-42 (citations omitted).

This analysis accounts for Pa.R.E. 613. However, we disagree that the evidence was admissible under this theory.[7] In **Bond**, **supra**, the appellant argued that the trial court "erred in permitting the jury to see a video of Child's forensic interview . . . with Philadelphia Children's Alliance[.]" **Id**. at *1. The trial court "did so at the Commonwealth's request after defense counsel cross-examined Child extensively with regard to the substance of the interview depicted in the video." **Id**. at *2.

**Bond** extensively discussed **Commonwealth v. Baker**, 963 A.2d 495 (Pa.Super. 2008). Therein, we upheld the admission of a DVD of a child victim's interview with a doctor as a prior consistent statement. The Commonwealth asked for introduction of the video on the grounds that "during the cross-examination of seven[-]year[-]old J.B., she was asked questions which the prosecution believed suggested that J.B. had been induced to fabricate her testimony." **Id**. at 504. Defense counsel insinuated that J.B. was told what to say in court, and the trial judge agreed with the prosecutor's view that "[counsel] suggested that J.B. had been induced to

_____

[7] While the Commonwealth correctly notes that we may affirm on any basis, the Commonwealth acknowledges that the trial court did not admit the evidence on this ground. Its argument therefore invokes the "right for any reason" doctrine. **See Commonwealth v. Fant**, 146 A.3d 1254, 1265, n.13 (Pa. 2016) ("According to the 'right-for-any-reason' doctrine, appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record.").

fabricate her testimony." *Id.* at 505. The trial court admitted the interview, and we affirmed.

*Bond* distinguished *Baker* by noting the interview in *Baker* preceded the alleged fabrication of the in-court testimony. That was not the case in *Bond*:

> While the Interview Video antedated Child's cross-examination at trial, it did not antedate the alleged motive to lie, which Appellant claims arose before she first complained of the assault. Put simply, Child's statements in the Interview Video were not "made before" the alleged fabrication, as Rule 613(c)(1) expressly requires.

*Bond*, *supra* at *4 (footnote omitted).

The same logic controls herein. While defense counsel asserted that R.E. was lying, the forensic interview statements did not precede the alleged fabrication or motivation to lie. The Commonwealth's point that the forensic interview preceded the trial testimony therefore misses the mark. *Id.* (rejecting the admission of prior consistent statements on theory that defense "accused Child of fabricating her accounts 'on an ongoing basis'").

Finally, the Commonwealth's claim that introducing the prior consistent statement was permissible to rebut the fabrication would, if correct, only permit the Commonwealth to introduce those portions of the statement which bore directly on the particular areas of impeachment. "It is generally required, however, that any corroboration offered, including prior consistent statements, be related to the impeachment they are to deny, rebut, or

explain[.]" ***Willis***, ***supra*** at 692. Thus, the Commonwealth's theory cannot justify what happened at trial.

## C

<u>Error was harmless beyond a reasonable doubt</u>

While we find that the trial court erred, we do not find that Appellant is entitled to a new trial since the error was harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005) (quoting ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1998)). We find that the second possibility applies.

Preliminarily, we note that the Commonwealth did not raise this issue. The harmless error doctrine places the burden on the Commonwealth to prove beyond a reasonable doubt that the error could not have contributed to the verdict. However, our jurisprudence does not require the Commonwealth to raise the matter in its brief. As our Supreme Court stated in ***Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007)

> We recognize that the Commonwealth has the burden of proving beyond a reasonable doubt that the error could not have contributed to the verdict, and that it does not offer a harmless error argument in its brief. Nonetheless, an appellate court may

affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee.

*Id*. at 1073 (citations omitted). We may therefore reach the issue notwithstanding the Commonwealth's failure to raise it.[8]

Turning to whether this error was actually harmless, a primary criticism against the introduction of prior consistent statements is that such evidence is cumulative.

_____

[8] In **Commonwealth v. Hicks**, 156 A.3d 1114 (Pa. 2017) (OAJC), Justice Wecht's dissenting opinion observed:

> In this case, the Commonwealth has never invoked the harmless error doctrine. Ordinarily, this might raise the question of whether the Commonwealth must invoke the doctrine before we may apply it. Generally, I adhere to our precedential declaration that "this Court may affirm a judgment based on harmless error even if such an argument is not raised by the parties." **Commonwealth v. Allshouse**, 614 Pa. 229, 36 A.3d 163, 182 (2012). However, there is apparent tension between that principle and the well-settled rule that the "Commonwealth bears the burden of demonstrating harmless error." **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501, 521 (2005). Although I believe that we can apply the doctrine without prior invocation, it seems inconsistent to assign to a party a burden of proof that is applicable only in appellate proceedings, while determining simultaneously that the party has satisfied that burden without the party raising or addressing the doctrine in any way. Nonetheless, in light of the Commonwealth's unequivocal abandonment of the harmless error claim here, any tension between these principles can (and should) be resolved in another case.

*Id*. at 1158 n.1 (Wecht, J., dissenting). Justice Baer also filed a concurring opinion discussing *sua sponte* invocation of harmless error. *Id*. at 1139-41 (Baer, J., concurring).

> Though often stated as an axiom without rationale, the primary reasons for exclusion of evidence of prior consistent statements are the need to avoid unnecessary repetition of cumulative evidence, and the need to prevent the fabrication of evidence.
>
> . . . .
>
> The general rule of exclusion of prior consistent statements, then, is based not upon hearsay grounds but upon a general consensus that the relevance of such evidence to corroborate *unimpeached* testimony is ordinarily outweighed by the danger of fraudulent manufacture of evidence, confusion of issues, undue delay, and needless repetition of cumulative evidence.

**Willis**, **supra** at 691 (emphasis in original).

Presently, there is little danger of "fraudulently manufacture[d]" evidence in the sense that the prior consistent statement was recorded and played to the jury. This is thus not a case where the jury heard a third party witness relating R.E.'s own words. Moreover, Appellant does not suggest that the contents of the statements exceeded the scope of what R.E. testified to before the jury. **See Commonwealth v. Smith**, 586 A.2d 957, 964 (Pa.Super. 1991) ("The officers' testimony included detailed accounts of the incidents which were never supplied by S.L. herself, thereby greatly augmenting S.L.'s testimony. We hold that the out-of-court statements do not fall within the prior consistent statements exception to the hearsay rule.").

Instead, Appellant argued that he was prejudiced because the interview "bolster[ed] [R.E.]'s credibility by demonstrating that she had told a version of events consistent with her trial testimony more often than she

- 29 -

told the inconsistent version[.]" Appellant's brief at 33. That is an assertion that Appellant was prejudiced by the cumulative nature of that evidence. We disagree. The jury heard from R.E. under oath and their fundamental task was to weigh the credibility of her story against that of Appellant, who testified in his own defense. While we agree that our evidentiary rules prefer to avoid prior consistent statements, as set forth at length *supra*, we do not believe that the jury would be unduly swayed by the knowledge R.E. previously related the same story. Indeed, the jury presumptively assumed that was the case. *See Commonwealth v. Hutchinson*, 556 A.2d 370, 372 (Pa. 1989) ("Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency[.]") Thus, while there was no need to buttress her testimony, the recorded statement was merely cumulative and harmless beyond a reasonable doubt. Appellant is therefore not entitled to a new trial despite the error.

**III**

**Sentencing claim**

Finally, Appellant alleges that his sentence of lifetime imprisonment is illegal. Appellant received that mandatory sentence pursuant to 42 Pa.C.S. § 9718.2, which states:

> **(a) Mandatory sentence.--**
>
> . . . .

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9799.14 . . . the person shall be sentenced to a term of life imprisonment, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required.

42 Pa.C.S. § 9718.2.

Appellant does not claim that his prior convictions did not qualify for purposes of this statute. Rather, he asserts that the instant statute is unconstitutional under *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any fact that increases the penalty for a crime is considered an element of the crime, and must be found beyond a reasonable doubt by the factfinder.

We disagree. Applying a mandatory minimum sentence on the basis of prior convictions has been understood as an exception to *Alleyne*. *Id*. at 111 n.1 (citing *Almendarez–Torres v. United States,* 523 U.S. 224 (1998)). *See Commonwealth v. Resto*, 179 A.3d 18, 21 n.1 (Pa. 2018) (OAJC) ("This case does not concern *previous* convictions considered as aggravation at sentencing. Notably, under prevailing federal jurisprudence, such prior convictions are not treated as a type of fact implicating *Alleyne*.)

(citation omitted, emphasis in original). Therefore, we reject Appellant's challenge to his sentence.[9]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/11/2018

---

[9] Appellant notes that these precedents bind this Court and "advances this argument . . . as a matter of issue preservation." Appellant's brief at 38 n.5.